IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAUL ALBERT GUARDADO,

    Petitioner,

  v.

MARGARITA PEREZ, et al.,

    Respondents.

                            /

No. C 05-00194 CW

ORDER GRANTING PETITIONER'S EMERGENCY APPLICATION FOR ENFORCEMENT OF WRIT OF HABEAS CORPUS BY RELEASE OF PRISONER AND STAYING ORDER

On April 9, 2008, the Court issued an Order Granting Petition for Writ of Habeas Corpus in which it invalidated the 2006 decision of the Board of Parole Hearings (Board) that Petitioner was unsuitable for parole and ordered the Board to hold a re-hearing in accordance with the findings in the Order. On June 3, 2008, Respondent filed a notice of appeal of the Court's judgment. Respondent moved to dismiss the appeal voluntarily and on September 5, 2008, the Court of Appeal issued its mandate granting Respondent's motion. On August 12, 2008, the Board held a re-hearing and again found Petitioner unsuitable for parole. On January 22, 2009, the Court issued an Order Granting Petitioner's Application for Order Enforcing Writ of Habeas Corpus which found that the Board's August 12, 2008 decision was not supported by some

evidence and ordered the Board to submit its parole denial to the Governor.  The Board did so and the Governor waived review of the Board's decision.  On June 23, 2009, the Board set a release date for Petitioner based on this Court's order and issued a release memorandum indicating that Petitioner was eligible for release.  On July 21, 2009, the Governor issued an opinion reviewing and reversing the Board's decision.  Pursuant to the Governor's decision, Petitioner remains incarcerated.

On August 28, 2009, Petitioner filed this emergency motion asking the Court to enforce its April 9, 2008 judgment by ordering his immediate release from prison.  Respondents oppose the motion and Petitioner has filed a reply.  The matter was taken under submission.  Having considered all the papers filed by the parties, the Court grants Petitioner's motion, remands the case to the Board and orders it to authorize Petitioner's release.  The Court stays its order, to allow Respondents to seek a further stay from the Court of Appeals.

DISCUSSION

Petitioner argues that: (1) the Governor's July 21, 2009 decision was not based on some evidence that Petitioner presented a danger to the public if he were released on parole; (2) the Governor's decision was untimely; (3) the Governor waived review of the Board's 2008 decision; (4) the Governor is judicially estopped from re-visiting the issue of Petitioner's eligibility for release; and (5) the Governor's decision was outside the scope of the June 23, 2009 Board hearing.  Respondents argue that the Governor properly reviewed the Board's June 23, 2009 decision and that, until Petitioner exhausts state court remedies, the Court lacks

2

jurisdiction to review the Governor's decision.

I. Jurisdiction and Exhaustion

Respondents assert that, because the Governor is not a named respondent in the petition, he is not bound by this Court's orders. The proper respondent in a federal habeas corpus petition is the petitioner's immediate custodian because this person is the only one who can produce "the body" of the petitioner. Brittingham v. United States, 982 F.2d 378, 379 (9th Cir. 1992). The Court's order is addressed to Petitioner's custodian.

Respondents assert that Petitioner must exhaust his state remedies regarding the Governor's July 21, 2009 decision by filing a new petition in state court and only then may Petitioner return to federal court to challenge the Governor's decision. Except for the general principle that federal habeas petitions must be exhausted in state court, Respondent offers no authority for this assertion.

Habeas courts are empowered to assess compliance with their mandates. Judulang v. Chertoff, 562 F. Supp. 2d 1119, 1126 (S.D. Cal. 2008). Where a habeas petitioner has secured a conditional release, he or she is entitled to the court's continuing supervision to ensure compliance with its order. Id. Otherwise, the habeas court's grant of relief would be meaningless. Id. A district court, on habeas review, may order a petitioner's release and this power continues after the grant of a conditional order. Phifer v. Warden, United States Penitentiary, Terre Haute, Indiana, 53 F.3d 859, 864 (7th Cir. 1995). A conditional order is essentially an accommodation accorded to the state indicating that a constitutional infirmity justifies a petitioner's release, and

3

allowing the state to cure the error. Id. at 864-65. Failure of the state to cure the error justifies the district court's release of the petitioner. Id. at 865.

As noted above, over one and one-half years ago, this Court issued its Order granting Petitioner a writ of habeas corpus, finding that "the Board's continued reliance on the commitment crime alone violated Petitioner's due process rights, and the state court's contrary finding was an unreasonable application of Supreme Court law." April 9, 2008 Order at 18-19. The Court remanded to the Board to hold a new hearing so that it could correct the constitutional error. However, on August 12, 2008, the Board again found Petitioner unsuitable for parole citing the commitment offense, Dr. Richard Starrett's April 29, 2008 psychological report and its opinion that Petitioner had only recently gained insight into his responsibility for the commitment offense. Petitioner filed an application to enforce the habeas writ and, in their opposition, Respondents argued, as they do here, that Petitioner must first exhaust state remedies again before he may challenge the Board's August 12, 2008 decision in this Court. In the January 22, 2009 Order Granting Petitioner's Application to Enforce the Writ, this Court rejected Respondents' exhaustion argument, explaining that Petitioner's application was not a new habeas petition, but was directed at the Board's compliance with the Court's April 9, 2008 Order. The Court addressed the merits of the Board's decision and concluded that the Board failed to cite some evidence, apart from the commitment offense which was insufficient, that Petitioner would be a danger to the public safety if released. Thus, the Board had failed to evaluate Petitioner's suitability for parole in

4

accordance with the April 9, 2008 Order.  Noting that California law allowed the Governor to review any decision of the Board regarding the parole of an inmate sentenced to an indeterminate prison term based upon a murder conviction, the Court remanded the case to the Board to submit to the Governor its August 12, 2008 decision denying parole along with this Court's April 9, 2008 Order.  January 22, 2009 Order at 11.  The Court expressly retained jurisdiction over the petition.  Id.  The Governor waived review of the Board's decision.

After some procedural delays, the Board met on June 23, 2009, and, in compliance with the Court's April 9, 2008 and January 22, 2009 Orders finding Petitioner suitable for parole, granted Petitioner parole.  The Board set a base term of confinement of 168 months which was less than the 235 months that Petitioner had served.  The Board noted that because Petitioner had served more than the base term, he would not "have to wait around for a release date."

As noted above, however, Petitioner was not released.  The Governor intervened, reversed the Board's decision, and Petitioner remains in prison.

As a matter of state law, California Penal Code § 3041.2(a), the Governor must base his decision on the same record that was before the Board at its 2006 and 2008 hearings on Petitioner's suitability for parole.  This is the same record that was before this Court when it issued its rulings in this case and the same record that is now before this Court.  Based on the above sequence of events and the fact that this Court retained jurisdiction over this case to ensure that its Orders would be followed, the Court

5

has jurisdiction to review the Governor's decision for compliance with its orders. Petitioner's application is not a new habeas petition, but is directed at the Governor's compliance with the Court's April 9, 2008 Order. It is unnecessary to require that Petitioner retread his steps by filing a new petition in state court so that he may again come before this Court on the same facts that are now before this Court. Therefore, the Court reviews the merits of the Governor's decision.[1]

II. Governor's Decision

The Governor provided the following reasons for his reversal of the Board's grant of parole: (1) the second-degree murder of which Petitioner was convicted was especially atrocious because the manner in which the victim was killed -- being chased down by a gang of teenagers, including Petitioner, being beaten, kicked and then shot as he begged for his life -- demonstrated an exceptionally callous disregard for the victim's life and suffering; (2) the motive for the murder -- one of the young people with Petitioner wanted the victim's hat -- was very trivial in relation to the magnitude of the crime; (3) Petitioner lacks full insight into the circumstances of the offense and minimizes his role in the crime because he has denied repeatedly that he had a gun at the time of the murder; (4) Petitioner's June, 2008 mental health evaluation indicated that he had a "low to moderate" risk for violence "when compared to similar inmates" and "continues to deny that he was the shooter." The Governor summarized the

---

[1] Because the Court grants relief based on the merits of the Governor's decision, it does not address Petitioner's procedural arguments.

6

1  evidence for his decision as follows:

2      The gravity of the crime supports my decision, but I am
   particularly concerned that Guardado continues to
3  minimize his actions and that the June 2008 mental health
   evaluator[2] concluded that he poses an increased risk for
4  future violence because he fails to accept full
   responsibility.  This evidence indicates to me that
5  Guardado still poses a risk of violent recidivism and
   that his release from prison at this time would pose an
6  unreasonable risk to public safety.

7  Governor's Decision at 3-4.

8      A. Commitment Offense and Trivial Motive

9      The Governor's first two reasons, that the crime was egregious

10 and the motive was trivial, were addressed by the Court in its

11 April 9, 2008 Order as follows:

12     It is undeniable that the offense was heinous, atrocious
   and cruel, demonstrating a callous disregard for human
13 suffering.  These facts will never change.  However, the
   Ninth Circuit has held that continuous reliance over time
14 on static factors such as the commitment offense could
   violate due process. . . .  The question is whether it is
15 reasonable to find after almost thirty years that the
   facts of the offense constitute some evidence that
16 Petitioner would be a danger to society if released.

17     . . .

18     In light of Petitioner's entire record -- including his
   age at the time of the crime, his violence-free years
19 before he was arrested, his lengthy incarceration, his
   rehabilitation through education, good conduct and
20 charitable work -- his commitment offense, which occurred
   twenty-nine years ago, no longer constitutes "some
21 evidence" that his release will pose an imminent danger
   to public safety.

22 April 9, 2009 Order at 12, 18.

23     In reaching this conclusion, the Court scrutinized the entire

24 record, noting also Petitioner's lack of violent behavior in

25 prison, his positive plans for parole and his positive

---

27     [2]The Governor's reference to a June, 2008 mental health
   evaluator appears to pertain to Dr. Starrett's April 29, 2008
28 psychological evaluation.

psychological evaluations. The Court will not repeat this analysis here, but underscores that, for many reasons, the unchanging facts of the commitment offense and the trivial motive for the offense no longer comprise some evidence that Petitioner would currently be a danger to the public if released.

B. Petitioner's Lack of Insight

The Governor found that Petitioner lacked insight into the commitment offense because he did not admit he was the shooter and, from this, the Governor concluded that Petitioner may commit similar crimes if released. In its April 9, 2008 Order, the Court addressed this same argument as presented by the Board and noted that California Penal Code § 5011(b) prevented the Board from requiring that an inmate admit guilt to any crime for which he or she was committed. The Court found that the Board could not deny Petitioner parole for not admitting to all of the facts of the crime as interpreted by the Board. The same reasoning applies to the Governor's reliance on this factor. Therefore, the fact that Petitioner did not admit he was the shooter cannot be relied upon as some evidence that he is currently a danger to the public if released.

C. Mental Health Evaluations

In the Board's August 12, 2008 decision denying parole, it characterized Dr. Richard Starrett's April 29, 2008 psychological report as not being totally supportive of release because Dr. Starrett found that Petitioner has a low to moderate propensity for violence when compared to similar inmates. This is the same argument relied upon by the Governor.

In its January 22, 2009 Order, the Court pointed out that Dr.

8

Starrett's 2008 finding contradicted the findings in 1999 and 2004 psychological evaluations that Petitioner has a low propensity for violence. January 22, 2009 Order at 9. The Court explained:

> That Petitioner was continuously involved in positive programming and education from 2004 to 2008 without any incidents that would indicate a propensity for violence makes it unreasonable to conclude that, during this time, Petitioner's propensity for violence changed for the worse. This conclusion is supported by the July 18, 2008 psychological evaluation by Dr. Melvin Macomber who opined that Dr. Starrett had used inappropriate measures for his risk assessment of Petitioner and thus his conclusion was invalid. Dr. Macomber concluded that Petitioner "does not pose any more risk to society than the average citizen," and that "the results of psychological testing and interviewing indicate that Mr. Guardado is probably one of the least dangerous people the state has."

January 22, 2009 Order at 9-10.

Thus, the April 29, 2008 psychological evaluation does not provide some evidence of Petitioner's current dangerousness.

In sum, the Governor failed to cite some evidence that Petitioner currently poses a danger to society if released, to support his decision reversing the Board's grant of parole. Therefore, the Governor's decision violated Petitioner's due process right to parole and must be reversed. Because the record is complete and cannot be augmented, remand to the Governor is unnecessary. Therefore, the Court remands this case to the Board to release Petitioner on parole.

Because a case raising many of the issues here is pending before an en banc panel of the Ninth Circuit, Hayward v. Marshall, 512 F.3d. 536 (9th Cir. 2008), reh'g en banc granted, No. 06-55392, slip op. 5923 (9th Cir. May 16, 2008), the Court will stay Petitioner's actual release for ten days to allow Respondent to seek a further stay from the Court of Appeals.

CONCLUSION

Accordingly, Petitioner's motion for enforcement of writ of habeas corpus is granted. This case is remanded to the Board to order Petitioner's release. Petitioner's release is stayed for ten days to allow Respondents to seek a further stay from the Court of Appeals. Respondents shall file a report with the Court in ten days, indicating whether they have sought or received a stay from the Ninth Circuit, or have released Petitioner.

IT IS SO ORDERED.

Dated: December 14, 2009

CLAUDIA WILKEN
United States District Judge